**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DEMETRIUS MOODY**, | |
| *On behalf of himself and those similarly situated,* | |
| Plaintiff, | Case No.: 1:22-cv-01546 |
| v. | |
| **TEAM WASHINGTON, INC.; MARY LYNNE CARRAWAY; JOHN DOE 1-10; DOE CORPORATION 1-10,** | |
| Defendants. | |

**REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION AND DISMISS OR STAY PLAINTIFF'S CLASS AND COLLECTIVE ACTION COMPLAINT**

## I.    INTRODUCTION.

Defendants Team Washington, Inc. ("TWI" or the "Company") and Mary Lynne Carraway ("Carraway") (collectively, "Defendants") demonstrated in their Opening Memorandum that Plaintiff Demetrius Moody ("Plaintiff") brought his federal FLSA and D.C. wage and common law claims in the wrong forum because he agreed to arbitrate such claims on an individual basis by signing an arbitration agreement during the hiring and onboarding process.  Plaintiff does not dispute that he signed and understood the agreement, nor does he dispute that the arbitration agreement encompasses the claims asserted in this lawsuit. Nonetheless, Plaintiff contends that he is not required to submit to arbitration because he claims that (1) FLSA claims are categorically immune from mandatory arbitration, (2) the arbitration agreement is "illegal," (3) the arbitration agreement is unconscionable, and (4) arbitration fails to effectively vindicate his rights.  Plaintiff also claims, in response to Defendants' Motion to Compel Arbitration, that Defendants have

waived the right to compel arbitration because they filed a contemporaneous motion to dismiss in the time limit established by the Federal Rules.  Plaintiff's arguments are unavailing.

At the outset, Plaintiff's position that FLSA claims cannot be the subject of mandatory arbitration is contradicted by multiple decades worth of well-established Supreme and Circuit Court precedent.  Plaintiff asks this Court to ignore binding precedent and regular District Court practice and adopt a novel standard for FLSA claims that has never been adopted by any other court.  The Court should swiftly deny Plaintiff's request.

Plaintiff's contention that the arbitration agreement is illegal because it contains a provision that shortens the limitations period is likewise misplaced.  Courts in this District have long held that parties may validly agree to a shorter limitations period provided that the period itself is a reasonable one and have found that a six-month limitation is not inherently unreasonable.  And to the extent the period is not reasonable under the circumstances, D.C.'s doctrine of equitable reformation of contracts, and the agreement's severability clause, permits modification of the agreement to eliminate potentially violative provisions.

Plaintiff's remaining arguments of unconscionability and inability to effectively vindicate his rights likewise miss the mark.  His arguments are either premised on speculation or, once again, stand in direct contradiction to long-standing Supreme Court and D.C. precedent.  Plaintiff's arguments are unavailing, and the Court should grant Defendants' Motion and compel Plaintiff to arbitrate his claims on an individual basis.

## II.  **ARGUMENT.**

### A.   **Plaintiff Failed to Demonstrate That His FLSA Claims Should be Excluded from Arbitration.**

Plaintiff contends, without any direct legal support, that the arbitration agreement he signed to start working as a delivery driver for TWI is unenforceable because, in his view, FLSA claims

are categorically immune from mandatory arbitration.  Specifically, Plaintiff contends that an agreement to arbitrate under the FAA abridges his non-waivable rights under the FLSA, based on his view that FLSA claims can only be settled under the supervision of the Department of Labor or a court, making compelled arbitration of such claims illegal.  Plaintiff outright challenges and decries as wrongly decided decades worth of legal precedent and practice, from courts across all jurisdictions and levels, *including the Supreme Court*, that unmistakably establishes that FLSA claims are subject to arbitration.  Plaintiff rests his argument solely on the *legally unsupported* notion that arbitration is synonymous with private settlement between the parties.  Moreover, he contends that a judicially-created standard that is presently subject to a Circuit split and not adopted by the D.C. Circuit (and only narrowly applied by District Courts) should supplant a conclusion unanimously reached by every Circuit Court to consider the question and confirmed by the Supreme Court—that FLSA claims are arbitrable.  Finally, contrary to Plaintiff's position, the Supreme Court's decision in *Morgan v. Sundance, Inc.*, does nothing to disturb that legal aphorism. In fact, *Morgan* only further compels arbitration of Plaintiff's wage claims.

> **1.    As confirmed by overwhelming, well-established Supreme Court and Circuit Court precedent, FLSA claims are arbitrable.**

Plaintiff is correct that "courts have allowed arbitration of FLSA cases."  (Opp'n, at 6.) But what Plaintiff fails to mention is that those "courts" include the United States Supreme Court, every Circuit Court to consider the question, and every district court that has encountered a request to compel arbitration of an FLSA wage claim over at least that same time, as confirmed by Plaintiff's failure to cite even *one* case concluding otherwise.  Indeed, Plaintiff's general contention that the FLSA displaces the FAA is not a new one, and courts have examined various claimed conflicts between the two statutes only to find none every time.  At this point, it is well-established that FLSA claims are subject to arbitration.

Over thirty years ago, the Supreme Court proclaimed that "[i]t is by now clear that statutory claims may be the subject of an arbitration agreement, enforceable pursuant to the FAA." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 107 (2001) (confirming employment contracts are arbitrable under the FAA). Indeed, the Supreme Court reiterated its longstanding position that "having made the bargain to arbitrate, the party should be held to it unless Congress itself has evidenced an intention to preclude a waiver of judicial remedies for the statutory rights at issue." *Id.* Plaintiff suggests that such Congressional intent is evidenced because *some* courts have held that the FLSA does not permit private settlement of claims absent oversight from the DOL or a court. As the Supreme Court again explained in *Epic Systems Corporation v. Lewis*, however, Plaintiff's argument "faces a stout uphill climb." 138 S. Ct. 1612, 1624 (2018).

As the *Epic Systems* Court summarized:

> When confronted with two Acts of Congress allegedly touching on the same topic, this Court is not at "liberty to pick and choose among congressional enactments" and must instead strive "to give effect to both." *Morton v. Mancari*, 417 U.S. 535, 551 (1974). A party seeking to suggest that two statutes cannot be harmonized, and that one displaces the other, bears the heavy burden of showing 'a clearly expressed congressional intention' that such a result should follow. *Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 533 (1995). The intention must be 'clear and manifest.' *Morton*, *supra*, at 551. And in approaching a claimed conflict, we come armed with the "strong presumption" that repeals by implication are "disfavored" and that "Congress will specifically address" preexisting law when it wishes to suspend its normal operations in a later statute. *United States v. Fausto*, 484 U.S. 439, 452, 453 (1988).

*Id.* at 1624 (cleaned up). The *Epic Systems* Court continued, noting that, "[i]n many cases over many years, this Court has heard and rejected efforts to conjure conflicts between the [Federal] Arbitration Act and other federal statutes. In fact, this Court has rejected *every* such effort to date (save one temporary exception since overruled)[.]" *Id.* at 1627 (emphasis in original).

4

The *Epic Systems* Court upheld the validity of arbitration agreements containing class and collective actions waivers against the argument that requiring individual arbitration proceedings violates the National Labor Relations Act ("NLRA") by barring employees from engaging in the "concerted activity" of pursuing claims on a class or collective action basis. *Id.* at 1620.  In doing so, however, the Court recognized that "[t]he employees' underlying causes of action involve their wages and arise not under the NLRA but under an entirely different statute, the Fair Labor Standards Act," and then asked the rhetorical question why the FLSA was not offered as the source of the potential conflict with the FAA.  *Id.* at 1626.  As the *Epic Systems* Court recognized, that was because decades old Supreme Court precedent, along with that of "every circuit to consider the question," has "held that the FLSA allows agreements for individualized arbitration."[1]  This also includes the U.S. District Court for the District of Columbia, as well as Your Honor.[2]

Plaintiff, seemingly aware of the extensive precedent holding that FLSA claims are arbitrable, contends that he raises a new argument unaddressed by any of the courts to previously consider this issue, which he suggests should result in a finding contrary to every existing Supreme and Circuit Court decision on the issue.  (*See* Opp'n, at 6.)  Plaintiff's position, however, faces several insurmountable hurdles.

---

[1]      *Id.* at 1612 (citing *Nat'l Lab. Rels. Bd. v. Alternative Ent., Inc.*, 858 F.3d 393, 413 (6th Cir. 2017) (opinion of Sutton, J.) (collecting and citing *Walthour v. Chipio Windshield Repair, LLC*, 745 F.3d 1336 (11th Cir. 2014); *Sutherland v. Ernst & Young LLP*, 726 F.3d 290 (2d Cir. 2013); *Owen v. Bristol Care, Inc.*, 702 F.3d 1050, 1054 (8th Cir. 2013); *Carter v. Countrywide Credit Indus.*, 362 F.3d 294 (5th Cir. 2004); *Adkins v. Labor Ready, Inc.*, 303 F.3d 496 (4th Cir. 2002))).

[2]      *See, e.g.*, *Sakyi v. Estee Lauder Companies, Inc.*, 308 F. Supp. 3d 366, 371 (D.D.C. 2018) (Howell, C.J.); *Mitchell v. Craftworks Restaurants & Breweries, Inc.*, No. CV 18-879 (RC), 2018 WL 5297815, at *1 (D.D.C. Oct. 25, 2018) (Contreras, J.); *Andresen v. IntePros Fed., Inc.*, 240 F. Supp. 3d 143, 147 (D.D.C. 2017) (Sullivan, J.); *Hawkins v. Hooters of Am., Inc.*, No. CIV. 09-1475 RJL, 2011 WL 2648602, at *1 & n.2 (D.D.C. July 6, 2011) (Leon, J.); *Hughes v. CACI, Inc.*, 384 F. Supp. 2d 89, 91 (D.D.C. 2005) (Walton, J.); *see also Helms v. Pioneer Energy Servs. Corp.*, No. CV 15-928-RCL, 2016 WL 5720863, at *1 (W.D. Tex. Sept. 30, 2016) (Lamberth, J.).

As an initial matter, that the Supreme Court in *Epic Systems* recognized without any hesitation or pause that FLSA claims are subject to individual arbitration evidences the Supreme Court's approval of the widespread conclusion that FLSA claims are arbitrable.  Indeed, how could the Supreme Court, or any court that considered the question, find that arbitration class waivers are enforceable in the FLSA context without concluding, as a necessity, that FLSA claims are themselves subject to arbitration?  The answer is simple: they could not.

Moreover, even a cursory review of the support (or lack thereof) offered by Plaintiff reveals that it offers nothing to challenge the foregone conclusion that FLSA claims are arbitrable, as even the Circuits that announced a standard requiring judicial or DOL approval of FLSA settlements have themselves *expressly permitted* arbitration of FLSA claims.  This includes the Eleventh Circuit, which authored the seminal case on approval of FLSA settlements, *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350 (11th Cir. 1982), as well as the Second, Third, Fourth, Sixth, and Ninth Circuits, along with countless decisions from their districts routinely demonstrating enforcement of arbitration agreements involving FLSA and other employment claims.[3]  None of those courts construe their own precedent requiring approval of FLSA settlements as a prohibition

---

[3]      *See, e.g.*, *Walthour*, 745 F.3d at 1335-36 ("Due to the absence of a contrary congressional command in the FLSA, we conclude plaintiffs' Arbitration Agreements are enforceable under the FAA, including their collective action waivers."); *Sutherland*, 726 F.3d at 297 ("[T]he FLSA does not include a 'contrary congressional command' that prevents the underlying arbitration agreement from being enforced by its terms."); *Vilches v. The Travelers Companies, Inc.*, 413 F. App'x 487, 494 (3d Cir. 2011) (vacating district court and referring action asserting FLSA and New Jersey wages claims to arbitration "to resolve whether the parties can proceed as a class in arbitration pursuant to the relevant arbitration provisions."); *Adkins*, 303 F.3d at 506 ("We therefore hold that FLSA claims may properly be resolved in mandatory arbitration proceedings."); *Gaffers v. Kelly Servs., Inc.*, 900 F.3d 293, 296 (6th Cir. 2018) ("[B]ecause the FLSA does not 'clearly and manifestly' make arbitration agreements unenforceable, we hold that it does not displace the Arbitration Act's requirement that we enforce the employees' agreements as written."); *Kuehner v. Dickinson & Co.*, 84 F.3d 316, 319 (9th Cir. 1996) (finding appellant failed in her "burden of proving that Congress restricted the enforcement of contracts to arbitrate FLSA claims.").

against arbitration of FLSA claims, as Plaintiff now desires, and for good reason: because cases concerning private *settlement* of FLSA claims have nothing to do with the parties' selected forum for *resolution* of those claims by a neutral, third party.  Plaintiff's attempt to conflate private settlement of FLSA claims with arbitration as a mutually acceptable forum for resolution of those claims is untenable.

This conclusion is only further confirmed by Plaintiff's failure to cite *any* case or persuasive authority to support his contention that private settlement of FLSA claims and arbitration of those claims are indistinguishable concepts, whether in the context of the FLSA or otherwise.  Instead, Plaintiff argues without any supporting authority that arbitration before a neutral third party is no different than settlement because (1) the neutral third-party "is not advocating" for the employee's interests, and (2) agreeing to assign resolution of claims to a neutral arbitrator is no different than the parties agreeing to flip a coin.  (Opp'n, at 14-15.)  Both contentions are erroneous.  The former seemingly engrafts an employee advocacy requirement into the FLSA found nowhere in the text of the statute or the relevant case law, particularly as courts are also not advocates of any party (like an arbitrator).  The latter, on the other hand, equates an act of random chance to a deliberation process controlled by a highly qualified neutral from the McCammon Group, a leading regional provider of ADR services whose panel of neutrals is comprised of a super-majority of former federal district court and magistrate judges, and state court judges.[4]  Plaintiff's "suspicion of arbitration as a method of weakening the protections afforded in the substantive law to would-be complaints" is an attack that the Supreme Court has repeatedly remarked to be "far out of step with our current strong endorsement of the federal statutes favoring

---

[4]     61 out of the 79 legal professionals on the McCammon Group's panel of neutrals are former federal, magistrate, or state judges.  (*See* Neutrals, The McCammon Group, https://www.mccammongroup.com/neutrals/.)

this method of resolving disputes." *Gilmer*, 500 U.S. at 30 (citing *Rodriguez de Quijas v. Shearson/Am. Exp., Inc.*, 490 U.S. 477, 480 (1989)).

Plaintiff also claims that arbitration's "secretive nature" frustrates the public's independent interest in assuring employees receive fair wages. (*See* Opp'n, at 16-18.) But again, a review of the case law provided by Plaintiff does not support the notion that arbitration is an impermissible venue to resolve his substantive rights. Rather, those cases only support the requirement that a judicial record be generally open to the public, and neither arbitration nor the FAA interferes with that mandate. Instead, the FAA *endorses* that requirement by containing specific procedures for confirming, vacating, modifying, or correcting arbitration awards for purposes of effecting any party's judgment. This process necessarily requires placing the would-be judicial record (the arbitration award or order) into the public record, thereby fulfilling any public interest in access to court records and assuring payment of fair wages. *See* 9 U.S.C. §§ 9-11. Win or lose, Plaintiff always has the option to confirm the arbitration award and place it in the public eye himself, nullifying his concerns of supposed "secrecy."[5] *See, e.g.*, *Am. Pro. Agency, Inc. v. NASW Assurance Servs., Inc.*, 121 F. Supp. 3d 21, 24 (D.D.C. 2013) ("If the consent order is approved and entered by the Court, it would become the Court's decision[.]" (citing *S.E.C. v. Van Waeyenberghe*, 990 F.2d 845, 849 (5th Cir.1993) ("Once a settlement is filed in district court, it becomes a judicial record.")))).

---

[5]      And in any event, arbitration proceedings are not "secret" and claimants before the McCammon Group have no obligation to maintain the confidentiality of the proceedings. Neither its rules nor procedures discuss any requirement to keep arbitration matters confidential. (*See* Arbitration Rules, The McCammon Group, https://www.mccammongroup.com/wp-content/uploads/2019/09/Agreement-to-Arbitrate-with-Rules-ONLY-Oct-2020-1.pdf [hereinafter Arbitration Rules].)

At bottom, pursuant to long-standing Supreme Court precedent, as expressly followed by the D.C. Circuit, to demonstrate that the FLSA displaces the *prior-enacted* FAA, Plaintiff has the *high* burden to demonstrate that the federal wage statute includes a "clear and manifest" congressional intent to make individual arbitration agreements unenforceable. *Epic Systems*, 138 S. Ct. at 1624; *United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019) ("[C]ourts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." (citing *Morton*, 417 U.S. at 551.))  Plaintiff failed in that effort.

Indeed, neither the D.C. Circuit nor the District Court has adopted the requirement of judicial or DOL approval over FLSA settlement agreements.  Instead, "courts in this district often agree to review proposed FLSA settlements when the parties jointly seek judicial approval" because, otherwise, "a court's refusal to assess proposed FLSA settlement *ex ante* [would] leave[] the parties in an uncertain position[.]"  *Eley v. Stadium Grp., LLC*, 236 F. Supp. 3d 59, 62 (D.D.C. 2017).  Even then, "the Court's review of a proposed FLSA settlement is properly limited only to those terms precisely addressing the compromised monetary amounts to resolve pending wage and overtime claims."  *Id.* (internal edits omitted) (quoting *Carrillo v. Dandan Inc.*, 51 F. Supp. 3d 124, 134 (D.D.C. 2014) (Howell, C.J.))  Thus, D.C. courts read the implied approval requirement for FLSA settlements narrowly, belying any suggestion that D.C. courts found a "clearly expressed congressional intention" in the FLSA demanding court or DOL involvement at all stages.

Moreover, a clear expression of legislative intent hardly exists where over half of the Circuits have either rejected or not addressed the supposed statutory requirement for approval of FLSA settlements.  *See Martinez v. Back Bone Bullies Ltd*, No. 21-CV-01245-MEH, 2022 WL

782782, at *9 (D. Colo. Mar. 15, 2022) ("Other than the Second, Fifth, and Eleventh Circuits, the other circuits have not conclusively addressed this issue.").  And that the Supreme Court and Circuit Courts across the nation have repeatedly rejected challenges to arbitration based on claimed conflicts with the FLSA in the four decades since *Lynn's Food* but never once suggested that the Eleventh Circuit opinion or its progeny created any conflict with the FAA should itself be a clear signal that no conflict, let alone "clearly expressed" intent, exists.

The primary flaw in Plaintiff's suggestion that *Lynn's Foods* shows a "clearly expressed" congressional intent to prohibit arbitration of FLSA claims "is that nothing in the text of the FLSA expressly requires court review and approval of settlements."  2022 WL 782782, at *7.  Simply, there is no expressed congressional intent found in the FLSA *at all*—let alone any *clearly expressed* intent—that concerns the FAA and the propriety of compelled arbitration of FLSA claims.  Plaintiff asks the Court to upend decades worth of Supreme and Circuit Court precedent and district court practice on a theory that has never been adopted by any court.  The Court should decline the invitation and instead grant Defendants' Motion compelling individual arbitration of Plaintiff's claims and staying or dismissing this action.

> ### 2.   *Morgan v. Sundance, Inc.* does not compel a different result because the Supreme Court merely reiterated that courts cannot create any custom arbitration rule like that requested by Plaintiff.

In his Opposition, Plaintiff suggests that the Supreme Court's decision in *Morgan v. Sundance, Inc.* has initiated a "course correction" that requires a re-evaluation of over three decades of remarkably consistent Supreme Court precedent concerning the arbitrability of FLSA and other statutory claims.  The *Morgan* Court did no such thing.

First, *Morgan* is inapplicable here, as compelling arbitration of Plaintiff's claims requires no "excessive deference" to the FAA.  Instead, Defendants' Motion seeks a straight-forward

application of the FAA to Plaintiff's claims.  As discussed above, Plaintiff's argument that the FLSA somehow overrides the FAA is subject to the *clearly expressed* Congressional intention standard, as would be any argument that pits one federal statute against another.  Therefore, *Morgan* is not applicable to the issue before the Court.

However, to the extent the Court considers *Morgan*, the unanimous Supreme Court simply emphasized that the FAA's "policy favoring arbitration" is "merely an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts."  *Morgan v. Sundance, Inc.*, 142 S. Ct. 1708, 1713 (2022).  As the Supreme Court clarified, what that means is that the policy "does not authorize federal courts to invent special, arbitration-preferring procedural rules;" or, put differently, "it is a bar on using custom-made rules, to tilt the playing field in favor of (*or against*) arbitration."  *Id.* at 1713-14 (emphasis added).  That is *precisely* what Plaintiff is asking the Court to do here—to engraft special rules for arbitration agreements involving FLSA claims to tilt the playing field *against* arbitration in that context.  In other words, Plaintiff asks the Court to review arbitration agreements made in an employment context under an entirely different standard than any other employment-related agreement or contract.  The *Morgan* Court, of course, has expressly prohibited such an approach.

Importantly, the judicially created requirement for approval of FLSA settlements itself has already come under scrutiny based on the recognition that, in requiring approval, "courts are impliedly and improperly giving the impression that somehow the policy considerations and rights protected by the FLSA are more important than other federal statutes."  *Martinez*, 2022 WL 782782, at *11.  As one court aptly described,

> The [FLSA] was enacted to protect against "the evil of overwork" without statutorily required compensation.  But surely, that evil is no greater than a case

> where a police officer gratuitously beats a suspect (42 U.S.C. § 1983), or a debt
> collector threatens children that their father will be imprisoned if he does not pay
> his bill (Fair Debt Collection Practices Act), or a consumer's credit is ruined
> because of a falsely reported debt (Fair Credit Reporting Act), or an employee is
> forced to submit to . . . face termination (Title VII).  These, and many others, are
> federal cases for a reason.  They are all important, and the statutes and constitutional
> provisions under which they arise all protect unique interests based on unique
> policy considerations.  For the courts to begin ranking the wrongs addressed by
> Congress where Congress has not would be to assume a legislative role.

*Barnhill v. Fred Stark Est.*, No. 15 CIV. 3360 BMC, 2015 WL 5680145, at *2 (E.D.N.Y. Sept. 24,

2015).  Plaintiff now asks this Court to further elevate the FLSA's supposed policy considerations

and place arbitration agreements involving FLSA or wage claims on an entirely different footing

than *every other* agreement that could possibly be made during employment.  *Morgan*

countenances specifically against Plaintiff's request to maintain different standards for

enforcement of arbitration agreements.  Accordingly, Plaintiff's claims are subject to arbitration.

## B.     Plaintiff Failed to Demonstrate That his Arbitration Agreement is "Illegal."

Plaintiff contends that even if his wage claims are subject to arbitration (they are), the Court

should still not require him to submit to arbitration because the arbitration agreement is "illegal."

(*See* Opp'n, at 18-19.)  Notably, Plaintiff acknowledges the existence of an agreement to arbitrate

and all the elements of contract formation but asserts that the contract is void from the outset

because it contains a provision that shortens the limitations period for bringing claims to 180 days.

(*See id.*)  Plaintiff's position is contrary to well-established D.C. law.

District of Columbia courts, like the Supreme Court, have long held that arbitration

agreements, like any other contracts, can contain provisions that modify or shorten the limitations

period prescribed by statute "provided that the shorter period itself shall be a reasonable period."

*See Hunter-Boykin v. George Washington Univ.*, 132 F.3d 77, 80 & n.1 (D.C. Cir. 1998) (citing

*Ord. of United Com. Travelers of Am. v. Wolfe*, 331 U.S. 586, 608 (1947) ("[I]t is well established

that, in the absence of a controlling statute to the contrary, a provision in a contract may validly limit, between the parties, the time for bringing an action on such contract to a period less than that prescribed in the general statute of limitations, provided that the shorter period itself shall be a reasonable period.")); *Njang v. Whitestone Grp., Inc.*, 187 F. Supp. 3d 172, 178 (D.D.C. 2016) ("[W]hile employment contract provisions such as the ones at issue here may serve to shorten the time for bringing an action to a lesser period than the time that is prescribed by statute, such a limitation is only enforceable if the shorter period itself is a reasonable period." (internal edits and quotations omitted)).  Thus, the mere inclusion of a provision that shortens the limitations period does not render the contract unenforceable.  Instead, the "Court must determine whether the six-month limitations period" in Plaintiff's arbitration agreement "is reasonable (and thus enforceable) as it applies" to Plaintiff's FLSA claims.  *Njang*, 187 F. Supp. 3d at 178.  However, "a six-month period within which to file suit is not an inherently unreasonable period of time."  *Id.*

Indeed, in *Njang v. Whitestone Group, Inc.*, Judge Ketanji Brown Jackson analyzed a parallel issue to determine whether an employment agreement containing a six-month limitations provision was reasonable as applied to plaintiffs' Section 1981 and Title VII claims.  *See id.* at 177-81.  Judge Ketanji Brown Jackson split her conclusion, finding the provision reasonable as to claims under Section 1981 but unreasonable as to those under Title VII.  *See id.* at 179-81. Notably, the analysis turned on the "expansive and intricate exhaustion requirement" undergirding the Title VII scheme.  *Id.* at 180-81.  As the *Njang* Court noted, unlike Section 1981 claims that could be pursued immediately, "merely by complying with the administrative exhaustion requirements of Title VII, plaintiffs are typically precluded from bringing their claims in court within six months of the challenged conduct, which means that a six-month limitations period has the practical effect of waiving employees' substantive rights under Title VII."  *Id.* at 180.  FLSA

claims, like Section 1981 claims, have no exhaustion requirement and may be pursued at any point. Moreover, the District of Maryland[6] has upheld a 180-day limitations provision contained in arbitration agreement as to claims under the FLSA. *Dieng v. Coll. Park Hyundai*, No. DKC 2009-0068, 2009 WL 2096076, at *8 (D. Md. July 9, 2009) ("[G]iven the general rule that statutory limitation periods may be shortened by contract, so long as the limitations period is not unreasonably short, Plaintiffs have not shown that the contractual limitation period is unreasonable."). Moreover, Plaintiff filed his lawsuit within 180 days,[7] so the provision does not affect his ability to assert his substantive rights here. *See Fox v. Computer World Servs. Corp.*, 920 F. Supp. 2d 90, 100 (D.D.C. 2013) ("With respect to the statute of limitations issue, Fox notified his employers of his claims four days after he was terminated so his ability to assert his substantive rights was not affected by the Agreement's provisions [applying a 6-month limitation] . . . Therefore, the statute of limitations and the administrative claims provisions do not render the Agreement unenforceable."). Plaintiff has failed to demonstrate that the provision is unreasonable.

Even if the limitations provision were found to be unreasonable, the arbitration agreement should be enforced because, as Plaintiff admits (Opp'n at 19), any violative provision may be appropriately modified or excised. Indeed, District of Columbia courts adhere to the "equitable reformation doctrine," which permits the courts to modify and reform facially overbroad or unreasonable clauses "to the extent that its terms are reasonable, regardless of grammatical severability." *Steiner v. Am. Friends of Lubavitch (Chabad)*, 177 A.3d 1246, 1256 (D.C. 2018).

---

[6]     District of Columbia courts "ordinarily turn to the common law of Maryland for guidance when there is no District of Columbia precedent on an issue." *George Washington Univ. v. Scott*, 711 A.2d 1257, 1261 (D.C. 1998).

[7]     Plaintiff worked for TWI from December 9, 2021, through January 25, 2022, and he filed his lawsuit on June 1, 2022. (*See* Dkt. No. 20-2 at 2, ¶ 5.) Therefore, his entire period of employment falls within the 180-day period set forth in the arbitration agreement.

Likewise, the Arbitration Agreement also has a savings clause where the parties agreed to sever any terms deemed invalid or unenforceable while giving full effect to all other terms that remain. (*See* ECF Dkt. No. 20-2, at 6 ¶ 4.)  Accordingly, if the Court finds that the 180-day limitation provision is unreasonable under the circumstances, the Court should equitably reform or excise the provision and find the agreement to arbitrate otherwise enforceable.  *See Mobile Now, Inc. v. Sprint Corp.*, 393 F. Supp. 3d 56, 69 n.9 (D.D.C. 2019) ("Unconscionable provisions of an arbitration clause can be severed if they are not integral to the agreement to arbitrate.").

### C.  Plaintiff Failed to Demonstrate That his Arbitration Agreement Was Unconscionable.

If not illegal, Plaintiff contends that the arbitration agreement is unconscionable because (1) TWI, Plaintiff's employer, was in a superior bargaining position, (2) the contract was presented on a take-it-or-leave-it basis; (3) the contract only benefits Defendants, and (4) the contract serves to suppress wages because of the confidential nature of arbitration.  (Opp'n, at 25-28.)  None of Plaintiff's arguments demonstrates unconscionability to set aside the parties' arbitration agreement, particularly as Plaintiff failed to provide any support demonstrating any hardship specific to *him*, as opposed to "minimum wage" earners generally.

### 1.  Plaintiff Failed to Demonstrate That the Arbitration Agreement is Unconscionable.

To set aside an arbitration agreement as unconscionable, the Court must find <u>both</u> procedural and substantive unconscionability.  *See Ruiz v. Millennium Square Residential Ass'n*, 156 F. Supp. 3d 176, 180 (D.D.C. 2016); *Simon v. Smith*, 273 A.3d 321, 331 (D.C. 2022); *Kenyon Ltd. P'ship v. 1372 Kenyon St. Nw. Tenants' Ass'n*, 979 A.2d 1176, 1186 (D.C. 2009).  Procedural unconscionability is marked by a party's lack of meaningful choice.  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 340 (2011); *Samenow v. Citicorp Credit Servs., Inc.*, 253 F. Supp. 3d

197, 204 (D.D.C. 2017); *Simon*, 273 A.3d at 331. Substantive unconscionability exists where terms are unreasonably one-sided in favor of the more powerful party. *Concepcion*, 563 U.S. at 340; *Samenow,* 235 F. Supp. 3d at 208-09; *Simon*, 273 A.3d at 331. A determination of substantive and procedural unconscionability requires a fact intensive, case-by-case assessment surrounding contract formation of the parties. *See Simon*, 273 A.3d at 331. But as the Supreme Court cautioned, the generally applicable contract defense of unconscionability may not be applied in a manner that targets the existence of an agreement to arbitrate as the basis for invalidating that agreement. *Concepcion*, 563 U.S. at 339-43, 348 (explaining that state law cannot "stand as an obstacle to the accomplishment of the FAA's objectives," by interfering with "the fundamental attributes of arbitration"). Here, there is neither procedural nor substantive unconscionability in the parties' agreement to arbitrate.

### a. Plaintiff failed to demonstrate procedural unconscionability.

Even if TWI was in a superior bargaining position when the parties entered into their agreement to arbitrate days before Plaintiff's first shift on the job, neither the relative size of the parties nor the alleged "take-it-or-leave-it" nature of the arbitration agreement demonstrates procedural unconscionability.[8] Indeed, "if unequal bargaining power were enough to create

---

[8] *See BHM Healthcare Sols., Inc. v. URAC, Inc.*, 320 F. Supp. 3d 1, 10 (D.D.C. 2018) ("That a contract is 'take-it-or-leave-it' cannot establish procedural unconscionability."); *Fox*, 920 F. Supp. 2d at 99 (no procedural unconscionability where employment agreement presented on "take it or leave it basis" and arbitration allegedly "buried within a larger series of new employee documents sent to [plaintiff] electronically for acknowledgment"); *Samenow*, 253 F. Supp. 3d at 205-08 (upholding arbitration clauses in cardmember agreements); *Ruiz*, 156 F. Supp. 3d at 181 (upholding agreement to arbitrate contained in home owners' association bylaws, noting that "[t]he mere fact that a contract is take-it-or-leave-it does not render a party 'powerless' and without 'real choice.'"); *Jung v. Ass'n of Am. Med. Colleges*, 300 F. Supp. 2d 119, 148-150 (D.D.C. 2004) (no procedural unconscionability for medical student to sign documents containing an embedded agreement to arbitrate because "mere inequality in bargaining power is not a sufficient reason to hold that arbitration agreements are never enforceable" (internal edits omitted)).

procedural unconscionability, virtually all agreements requiring employees to arbitrate would be unconscionable as employers generally have greater bargaining power than potential employees. Plainly, that is not the law." *Ashford v. PricewaterhouseCoopers LLP*, 954 F.3d 678, 685 (4th Cir. 2020).  Rather, "[t]here must be something more: a showing that the parties were greatly disparate in bargaining power, that there was no opportunity for negotiation <u>and</u> that the services [or employment] could not be obtained elsewhere.  Absent this last condition, the party retains the 'real choice' to simply go deal with some else." *Ruiz*, 156 F. Supp. 3d at 181 (emphasis in original).  Like the employee in *Fox*, the card holder *Samenow*, the condominium purchaser in *Ruiz*, and the student in *Jung*, Plaintiff had a choice whether to enter into the arbitration agreement or decline to do business with the company or entity offering the agreement and find employment with another company.  Thus, Plaintiff did not lack a meaningful choice; he had a choice, and he chose to execute the arbitration agreement, along with TWI's remaining onboarding documents, to begin working as a delivery driver for TWI.  Having made that choice, Plaintiff cannot demonstrate procedural unconscionability by later changing his mind.

That is particularly true here, where Plaintiff failed to establish *any facts* concerning *his* financial or other circumstances when he signed the arbitration agreement for the Court to infer that he had no other available options to him but to accept TWI's offer of employment contingent on arbitration.  *Cf. Brown v. Dorsey & Whitney*, LLP., 267 F. Supp. 2d 61, 74 (D.D.C. 2003) (dismissing employee's unconscionability argument, finding that "[t]his is . . . not a case where the plaintiff was compelled to sign the Employment Agreement because she feared being unemployed if she failed to do so").  Plaintiff provides no insight as to his job search efforts, his potential employment prospects, or *anything* to suggest or explain why he could not or did not seek employment elsewhere, such that he lacked the meaningful choice necessary to demonstrate

procedural unconscionability.   Moreover, as Judge Amy Berman Jackson recognized, the Arbitration Agreement and its terms were not "hidden in a maze of fine print, but was presented as a separate document," and presented an express disclosure and acknowledge immediately preceding the signature line in capital letters. *Fox*, 920 F. Supp. 2d at 98.   Likewise, Plaintiff "had a fair opportunity to review the Agreement, and he does not contend that he failed to understand its terms." *Id.*   Accordingly, Plaintiff failed to demonstrate procedural unconscionability.

### b.  Plaintiff failed to establish substantive unconscionability.

Even if there were evidence of procedural unconscionability (and there is not), the agreement would still be enforceable because Plaintiff failed to demonstrate substantive unconscionability.   "A contract is substantively unconscionable only if it unreasonably favors one party.   Thus, to prevail, [P]laintiff must show that the Agreement is so outrageously unfair that 'no man in his senses and not under delusion would make on the one hand, and . . . no honest and fair man would accept on the other." *Shatteen v. Omni Hotels Mgmt. Corp.*, 113 F. Supp. 3d 176, 181 (D.D.C. 2015) (internal citation omitted) (quoting *Hill v. Wackenhut Servs. Int'l,* 865 F. Supp. 2d 84, 94 (D.D.C.2012)); *see also Goodrich v. Adtrav Travel Mgmt., Inc.*, No. 15-CV-00899 (CRC), 2016 WL 4074082, at *3 (D.D.C. Feb. 1, 2016) ("A contract may be found substantively unconscionable only if its 'terms are unreasonably favorable to one party' such that they are 'so outrageously unfair as to shock the judicial conscience.'").

Here, "[t]he present case does not meet this standard." *Fox*, 920 F. Supp. 2d at 99.   First, even a cursory review of the terms of the arbitration agreements reveals no one-sidedness or unfairness, but rather provisions that either impose identical obligations and benefits on *both* parties, or provisions that are favorable *to Plaintiff*.   For instance, the Arbitration Agreement is not

cost prohibitive, as it limits Plaintiff's costs to no more than $200.[9]  *Accord Fox*, 920 F. Supp. 2d at 102 (no substantive unconscionability even where employee's arbitration agreement required him to split costs of arbitration); *Shatteen*, 113 F. Supp. 3d at 182 (nothing unconscionable about requiring employee to pay $125 arbitration filing fee and splitting costs of arbitration).  The agreement to arbitrate is also *mutual* and creates equal obligations between the parties.

Indeed, Plaintiff does not even argue that the *terms* of the *contract* are unfair or one-sided, but rather that the *benefits* of the *arbitration process*, generally, favor TWI.  That is, Plaintiff remarks that his arbitration agreement is made somehow unconscionable because "Defendants are the only ones who will ever use it," since supposedly a pizza company will never have any claims against delivery drivers.   (Opp'n, at 27-28.)   This is not an argument that supports unconscionability, nor is it even accurate.  It takes no effort to envision a pizza company raising claims related to theft, conversion, or property or vehicle damage against a delivery driver, all of which would be subject to arbitration under the agreement.  And regardless, the likelihood of one party invoking the terms of a contract has no bearing on whether the terms, themselves, are "so outrageously unfair as to shock the judicial conscience."  Plaintiff cannot demonstrate substantive unconscionability, and his scant attempt to do so only confirms that conclusion.

### D. Plaintiff Failed to Demonstrate That Arbitration Will Not Effectively Vindicate His Rights.

In *American Express v. Italian Colors Restaurant*, the Supreme Court recognized that an otherwise valid arbitration agreement may also be rendered unenforceable upon a showing that the agreement prevents the "effective vindication" of a party's rights in the relevant arbitral forum. 570 U.S. at 235.  In his Opposition, Plaintiff recounts a parade of horribles concerning the arbitral

---

[9]     *See* ECF Dkt. No. 20-2, at 8 ¶ 9(i) ("Team Washington shall pay 99 percent of the arbitration costs and fee, and Employee shall pay 1 percent of the costs and fees, up to $200.")

process, seemingly concluding that arbitration fails employees all over.  Plaintiff, however, never asserts that the alleged arbitrator bias and claimed discovery limitations are issues for *his specific case*, as opposed to the case of some hypothetical minimum wage earner.  Regardless, Plaintiff's arguments have long been rejected.

Plaintiff attacks the neutrality of the arbitral forum—generally, of course, not the McCammon Group—because Plaintiff believes that arbitrators have a general bias toward employers who serve as "repeat" customers.  (Opp'n, at 20-21.)[10]  This line of argument has been soundly rejected by the Supreme Court and the D.C. Circuit.[11]  Plaintiff's allusions toward bias are particularly inappropriate under the circumstances, given the protections the parties are afforded under the McCammon Group's Arbitration Rules.

Again, the McCammon Group is a leading regional provider of ADR services whose panel of neutrals is comprised of a super-majority (presently over 77%) of former federal district court and magistrate judges, and state court judges.  (*See infra* n.1.)  The prominence and composition of the arbitrators belies potential bias.  Moreover, the McCammon Group's Arbitration Rules provide additional assurances.  For example, each party is permitted the same number of strikes

---

[10]     Plaintiff's argument that Defendants will arbitrate more frequently than Plaintiff misses the point—to the extent arbitrators are concerned with "repeat customers" (a premise Defendants dispute), it is counsel, not the parties, who generally select the arbitrators.  It is at least as likely, if not more so, that Plaintiff's counsel will file far more arbitration demands for employees throughout the country than Defendants will defend in any given year, tilting any potential "repeat player effect" in Plaintiff's favor.

[11]     *See Gilmer*, 500 U.S. at 30 ("Gilmer first speculates that arbitration panels will be biased. However, '[w]e decline to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators.'"); *Cole v. Burns Int'l Sec. Servs.*, 105 F.3d 1465, 1485 (D.C. Cir. 1997) (explaining how "there are several protections against the possibility of arbitrators systematically favoring employers because employers are the source of future business."); *Pan Am Flight 73 Liaison Grp. v. Dave*, 711 F. Supp. 2d 13, 26 (D.D.C. 2010) ("[T]he D.C. Circuit has concluded that the mere possibility of bias is insufficient to render arbitration inappropriate.").

from the list of arbitrators provided by the McCammon Group for purposes of ranking (depending on the number of arbitrators provided).  (*See* Arbitration Rules, at 2 § 7.)  The Arbitration Rules expressly prohibit *ex parte* communications with the arbitrator.  (*See id.* at 3 § 13.)  And, of course, "[t]he FAA also protects against bias, by providing that courts may overturn arbitration decisions where there was evident partiality or corruption in the arbitrators."  *Gilmer*, 500 U.S. at 30. As *Gilmer* found under similar circumstances, "[t]here has been no showing in this case that those provisions are inadequate to guard against potential bias."  *Id.* (no bias where rules provided one peremptory and unlimited challenges for cause to select arbitrator and arbitrators required to disclose potential conflicts); *see also Thian Lok Tio v. Washington Hosp. Ctr.*, 753 F. Supp. 2d 9, 17 (D.D.C. 2010) (unfavorable rulings by arbitrator "do not demonstrate evident partiality").

Plaintiff next complains that arbitration before the McCammon Group is insufficient because (1) few rules supposedly exist that govern the process "beyond the arbitrator's preference," (2) the agreement limits discovery, and (3) arbitrators lack the subpoena power to obtain pre-hearing discovery from non-parties.  First, the D.C. Circuit has long established that specific rules or processes are not inherently necessary to enforce an arbitration agreement in the employment context, but instead, consistent with *Gilmer*, requires a showing that the arbitration arrangement will: (a) provide for neutral arbitrators, (b) provide for more than minimal discovery, (c) require a written award, (d) allow for all of the types of relief that would otherwise be available in court, and (e) does not require employees to pay unreasonable costs or arbitrator's fees.  *See Cole*, 105 F.3d at 1482.  The Parties' arbitration agreement meets all the requirements, and thus plainly demonstrates that Plaintiff "effectively may vindicate [his] statutory cause of action in the arbitral forum."  *Id.* at 1482. (D.C. Cir. 1997).

Second, Plaintiff's concern about limited discovery has been summarily rejected in virtually the same context.  In *Fox*, Plaintiff argued that he should not be compelled to arbitrate his claims because the agreement provided for "extremely limited" discovery, allowing "each party to take the deposition of only one individual and any expert witness designated by another party." *Fox*, 920 F. Supp. 2d at 100.  Judge Berman Jackson rejected plaintiff's position, finding that regardless of any expressed discovery limitations outlined in agreement, "the Agreement allows the arbitrator to order additional discovery if the requesting party shows 'substantial need' for such discovery," and any suggestion that such discretion would not be exercised appropriately is impermissible speculation.  *Fox*, 920 F. Supp. 2d at 100 ("An arbitration agreement that leaves the decision about which discovery tool to use and in what manner to the discretion of the arbitrator will not be invalidated based on speculation that the arbitrator may not allow adequate discovery.").  The McCammon Group's Arbitration Rules and the arbitration agreement itself plainly grants the arbitrator authority to allow for additional discovery, if needed.  (*See* ECF Dkt. No. 20-2, at 7 ¶ 9.c ("Subject to the Arbitrator's power to grant additional discovery for good cause shown . . ."); Arbitration Rules, at 4 § 14 ("In case arbitrated pursuant to an External Agreement . . . the Arbitrator may require limited discovery.").)

Moreover, Chief Judge James K. Bredar of the District of Maryland recently faced a similar challenge—that the McCammon Group provided for limited to no discovery—and aptly concluded that plaintiff's argument was "factually inaccurate."  *See Brown v. Brown's Maryland Motors, Inc.*, No. CV JKB-22-0474, 2022 WL 2117849, at *9 (D. Md. June 13, 2022).  As *Gilmer* notes, "[i]t is unlikely, however, that [individual wage claims] require more extensive discovery than other claims that [the Supreme Court has] found to be arbitrable, such as RICO and antitrust claims." *Gilmer*, 500 U.S. at 31 (dismissing complaint concerning limited discovery with respect to

arbitration of ADEA claims).  Plaintiff never explains why the limited discovery outlined in the agreement is insufficient for his purposes.

Third, Plaintiff's argument that arbitrators lack the necessary subpoena power is belied by his own citations, which reveal that arbitrators *do* have the power to subpoena information from the non-parties, just that the subpoenaed party must "appear before [the arbitrator] and bring the documents with them."  *E.g. Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 411 (3d Cir. 2004); *COMSAT Corp. v. Nat'l Sci. Found.*, 190 F.3d 269, 276 (4th Cir. 1999) ("The [FAA's] enforcement provision does not expand the arbitrator's subpoena authority, which remains simply the power to compel non-parties to appear before the arbitration tribunal.").  Plaintiff is not deprived of discovery, particularly as he fails to demonstrate why he cannot obtain the information he is requesting during a hearing before the arbitrator.

Finally, Plaintiff claims that the requirement of individualized arbitration fails to effectively vindicate his rights because it deprives him of the right to bring a class or collective action.  The Supreme Court has squarely rejected that argument and upheld the validity of class and collective action waivers in the FLSA context.  *See Epic Systems*, 138 S. Ct. at 1626.

Ultimately, Plaintiff's contentions, and the general tenor of his Opposition, is an appeal to policy concerns that arbitration disfavors low-wage workers.  As Justice Gorsuch correctly summarized in *Epic Systems*, however, that is not for the Court to address:

> While the dissent is no doubt right that class actions can enhance enforcement by "spreading the costs of litigation," it's also well known that they can unfairly "place pressure on the defendant to settle even unmeritorious claims". The respective merits of class actions and private arbitration as means of enforcing the law are questions constitutionally entrusted not to the courts to decide but to the policymakers in the political branches where those questions remain hotly contested. Just recently, for example, one federal agency banned individualized arbitration agreements it blamed for underenforcement of certain laws, only to see Congress respond by immediately repealing that rule. This Court is not free to

substitute its preferred economic policies for those chosen by the people's representatives.

138 S. Ct. at 1632 (internal edits and citations omitted).

Indeed, Plaintiff's reference to Congress' recent ban on arbitration of claims related to sexual assault and harassment only highlights that his request is one best left for the legislature. Plainly, Congress can recognize and act on curtailing any perceived ill effects of arbitration when it deems necessary, and that it took no steps over multiple decades to address any claimed concerns raised by Plaintiff is a telling signal that Congress sees no error. But even if, perhaps, Congress someday recognizes the claimed "failure of employment arbitration and its abuses," that is only more reason for the Court to await Congress' solution and not disturb decades of Supreme Court and D.C. Circuit precedent until it is announced.

### E.   Plaintiff Failed to Demonstrate Waiver of Right to Arbitrate.

Plaintiff suggests that Defendants waived their right to enforce the arbitration agreement because they filed a Motion to Dismiss seeking the dismissal of Plaintiff's FLSA claims. Plaintiff's argument, as he himself seemingly acknowledges, strains credulity. (*See* Opp'n, at 30 (agreeing that "this appears like a low threshold for waiver").) Indeed, the D.C. Circuit explicitly held that no concerns of waiver (or, specifically, *forfeiture*) arise where a party invokes its right to arbitrate at the earliest opportunity. *See Zuckerman Spaeder, LLP v. Auffenberg*, 646 F.3d 919, 922 (D.C. Cir. 2011) ("A defendant seeking a stay pending arbitration under Section 3 [of the FAA] who has not invoked the right to arbitrate on the record at the first available opportunity, typically in filing his first responsive pleading or motion to dismiss, has presumptively forfeited that right."). "Under *Zuckerman*, a party 'invokes' the right to arbitrate by 'asserting' it as an affirmative defense under Rule 8(c) of the Federal Rules of Civil Procedure or as the basis for a motion to dismiss under Rule 12." *Kelleher v. Dream Catcher, L.L.C.*, 263 F. Supp. 3d 253, 256

(D.D.C. 2017).  Defendants' conduct conformed to the edicts of *Zuckerman* in all respects, thus they neither waived nor forfeited their right to assert arbitration of this matter.

## III.    <u>CONCLUSION</u>.

For the foregoing reasons, together with those set forth in its Opening Memorandum, Defendants respectfully request an order: (1) compelling Plaintiff to arbitrate his claims on an individual basis in accordance with the Arbitration Agreement; and (2) dismissing or, in the alternative, staying this action pending resolution of arbitration of Plaintiff's claims.

DATED: September 9, 2022                         Respectfully submitted,

*/s/ Daniel E. Farrington*
Daniel E. Farrington (#471403)
Fisher & Phillips LLP
7501 Wisconsin Avenue, Suite 1220W
Bethesda, MD 20814
Tel. (301) 951-1538
Fax (301) 880-5031
dfarrington@fisherphillips.com

AND

Matthew R. Korn (*pro hac vice* pending)
Fisher & Phillips LLP
1320 Main Street, Suite 750
Columbia, SC 29201
Tel. (803) 740-7652
Fax (803) 255-0202
mkorn@fisherphillips.com

*Attorneys for Defendants*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **DEMETRIUS MOODY**, <br><br> *On behalf of himself and those similarly situated,* <br><br> Plaintiff, <br><br> v. <br><br> **TEAM WASHINGTON, INC.; MARY LYNNE CARRAWAY; JOHN DOE 1-10; DOE CORPORATION 1-10,** <br><br> Defendants. | Case No.: 1:22-cv-01546 |

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2022, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send electronic notice to all counsel of record.

DATED: September 9, 2022

Respectfully submitted,

*/s/ Daniel E. Farrington*

Daniel E. Farrington

FP 45164304.5